UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────

CHARLES JACOB RIEHL,

                              Plaintiff,

                                                      9:13-CV-0439
              v.                                      (GLS/TWD)

DONNA MARTIN; et al.,

                              Defendants.

─────────────────────────────────

APPEARANCES:

CHARLES JACOB RIEHL
08-A-4913
Plaintiff, pro se
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

GARY L. SHARPE
Chief United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

       The Clerk has sent to the Court for review a civil rights complaint brought by pro se

plaintiff Charles Jacob Riehl.  Dkt. No. 1 ("Compl.").  Plaintiff, who is confined at Southport

Correctional Facility and has not paid the filing fee for this action, seeks leave to proceed in

forma pauperis.  Dkt. No. 2 ("IFP Application").  Plaintiff also seeks the appointment of pro

bono counsel to represent him in this action.  Dkt. No. 10.

## II.    IN FORMA PAUPERIS APPLICATION

       "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal

court without prepayment of the filing fee that would ordinarily be charged."  *Cash v.*

*Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[1] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that plaintiff has submitted a completed and signed in forma pauperis application (Dkt. No. 2) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 3.

Accordingly, plaintiff's application to proceed with this action in forma pauperis is granted.

## III. SUFFICIENCY OF THE COMPLAINT

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must now consider the sufficiency of the allegations set forth in his complaint in light of 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

---

[1] Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Plaintiff has not filed any other actions in the district courts comprising the Second Circuit during his incarceration and, therefore, has not accumulated three strikes for purposes of 28 U.S.C. § 1915(g). *See* U.S. Party/Case Index (last visited June 25, 2013) <http://pacer.uspci.uscourts.gov/cgibin/dquery.pl >.

monetary relief against a defendant who is immune from such relief."  28 U.S.C.

§1915(e)(2)(B).  Similarly, Section 1915A(b) directs that a court must review any "complaint

in a civil action in which a prisoner seeks redress from a governmental entity or officer or

employee of a governmental entity" and must "identify cognizable claims or dismiss the

complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails

to state a claim upon which relief may be granted; or . . . seeks monetary relief from a

defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Abbas v. Dixon*,

480 F.3d 636, 639 (2d Cir. 2007) (stating that both Sections 1915 and 1915A are available to

evaluate prisoner pro se complaints).[2]  Thus, although the court has the duty to show

liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per

curiam), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro

se* complaint *before* the adverse party has been served and both parties (but particularly the

plaintiff) have had an opportunity to respond, . . ." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d

Cir. 1983) (internal citations omitted), the court also has a responsibility to determine that a

claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.[3]

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state

a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

---

[2] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

[3] "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915e is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer*, No. 9:07-CV-1241, 2008 WL 268215, *1 n.3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial . . . resources[.]"  *Neitzke*, 490 U.S. at 327.

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Although the court

should construe the factual allegations in the light most favorable to the plaintiff, "the tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable

to legal conclusions." *Id.*  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at

555).  Thus, "where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the

pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

     In his complaint, plaintiff asserts claims arising out of his confinement at Auburn

Correctional Facility.  *See* Compl. at 4.  Plaintiff claims that on April 18, 2012, the first night of

Passover, the evening meal served to Jewish inmates was not prepared in accordance the

dietary requirements of their religion.  *Id*.  Plaintiff claims that defendants thereby violated his

rights protected under the First Amendment to the U.S. Constitution and the Religious Land

Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. 2000cc *et seq*.  *Id*. at 6-

7.  In addition to Auburn Food Administrator Donna Martin, the complaint names Rabbi

Howard Matasar and Auburn Superintendent Harold Graham as defendants.  *Id*. at 1-2.

Plaintiff seeks an award of compensatory and punitive damages, as well as injunctive relief

against the defendants.  *Id*. at 21.  For a complete statement of plaintiff's claims, reference is

made to the complaint.

     "Prisoners have long been understood to retain some measure of the constitutional

protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352

F.3d 582, 588 (2d Cir. 2003).  Thus, for example, under accepted free exercise jurisprudence

inmates are guaranteed the right to participate in congregate religious services under most circumstances.  *See, e.g., Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir. 1993) (citing cases).  The reach of the First Amendment's free exercise clause extends beyond mere attendance at congregate religious services into other aspects of prison life including, pertinently, that of an inmate's diet and participation in religious meals.  *McEachin v. McGuinnis,* 357 F.3d 197, 204-05 (2d Cir. 2004); *Ford,* 352 F.3d at 597.  The analysis of a free exercise claim is governed by the framework set forth in *O'Lone v. Estate of Shabazz,* 482 U.S. 342 (1987) and *Turner v. Safley,* 482 U.S. 78, 84 (1987).  This framework is one of reasonableness and is "less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  *Ford,* 352 F.3d at 588 (citations omitted).[4]  Claims for the violation of an inmate's First Amendment rights by state officials and/or employees may be asserted in an action brought pursuant to 42 U.S.C. § 1983.  42 U.S.C. § 1983; *see, e.g., Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government demonstrates that the burden "is in furtherance of a compelling governmental interest" and "is the least

---

[4] In *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir. 1988), the Second Circuit held that to assess a free exercise claim, a court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective."  An individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard.  *Salahuddin v. Goord,* 467 F.3d 263, 274 n. 4 (2d Cir. 2006) (citation omitted).

restrictive means of furthering" that interest.  42 U.S.C. § 2000cc–1(a).[5]  RLUIPA defines

"religious exercise" to include "any exercise of religion, whether or not compelled by, or

central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  RLUIPA includes an

express private cause of action: "A person may assert a violation of [RLUIPA] as a claim or

defense in a judicial proceeding and obtain appropriate relief against a government."  42

U.S.C. § 2000cc–2(a).  For purposes of this provision, "government" includes, inter alia,

States, counties, municipalities, their instrumentalities and officers, and persons acting under

color of state law.  42 U.S.C. § 2000cc–5(4)(A).

        The Eleventh Amendment has long been construed as barring a citizen from bringing

a suit against his or her own state in federal court, under the fundamental principle of

"sovereign immunity."  *See* U.S. Const. amend. XI ("The Judicial power of the United States

shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by Citizens or Subjects of

any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene*

*Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465

U.S. 89, 100 (1984).  The Eleventh Amendment bars claims pursuant to 42 U.S.C. § 1983

seeking an award of damages against state officials acting in their official capacities.  *See*

*Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989) ("Obviously, state officials

literally are persons.  But a suit against a state official in his or her official capacity is not a

suit against the official but rather is a suit against the official's office. . . .  As such, it is no

---

        [5]  RLUIPA was enacted following the Supreme Court's decision in *City of Boerne v. Flores*, 521 U.S. 507
(1997), holding the Religious Freedom Restoration Act of 1993 "unconstitutional as applied to state and local
governments because it exceeded Congress' power under § 5 of the Fourteenth Amendment."  RLUIPA was
enacted by Congress pursuant to its authority under the Spending Clause and Commerce Clause of the
Constitution.  *See Sossamon*, 131 S. Ct. at 1656.

Case 9:13-cv-00439-GLS-TWD    Document 12    Filed 06/25/13    Page 7 of 10

different from a suit against the State itself. . . . We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").  Moreover, in *Sossamon v. Texas*,      U.S.    , 131 S. Ct. 1651 (2011), the Supreme Court held that "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver."  *Id.*, 131 S. Ct. at 1662.  Accordingly, claims for damages against state officials in their official capacities are not cognizable under RLUIPA.  *Id.*[6]

As a result, plaintiff's claims for money damages against defendants in their official capacities are barred by the Eleventh Amendment, and are hereby dismissed with prejudice pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted.

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court will require a response to plaintiff's remaining claims against the defendants.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

## IV.    APPOINTMENT OF COUNSEL

Plaintiff seeks appointment of pro bono counsel to represent him in this action.  *See* Dkt. No. 10.  Courts cannot use a bright-line test in determining whether counsel should be

---

[6]  The *Sossamon* Court did not address the issue of whether "appropriate relief" under RLUIPA includes money damages against state employees in their individual capacities, nor has this issue been addressed by the Second Circuit.  At this early stage of this action, the Court need not decide the scope of "appropriate relief" available under RLUIPA.  *See, e.g. Jean-Laurent v. Lawrence*, No. 12 Civ. 1502, 2013 WL 1129813, at *7 n.9 (S.D.N.Y. Mar. 19, 2013) (discussing cases and holding that "the individual defendants cannot be held liable in their individual capacities pursuant to RLUIPA".).  Defendants are of course free to pursue this issue in a properly filed motion.

7

appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392-93 (2d

Cir. 1997). As the Second Circuit stated in *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.

1986), "the district judge should first determine whether the indigent's position seems likely to

be of substance." *Id.* at 61. If the claim satisfies that threshold requirement, a number of

factors must be carefully considered by the court in ruling upon such a motion. Among these

factors are:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence
> implicating the need for cross-examination will be the major proof presented to
> the fact finder, the indigent's ability to present the case, the complexity of the
> legal issues and any special reason in that case why appointment of counsel
> would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge*, 802

F.2d at 61-62). This is not to say that all, or indeed any, of these factors are controlling in a

particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,*

899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge,* 802 F.2d at 61).

At this early stage of the litigation, it is difficult for the Court to assess the likely merits

of plaintiff's claims. Moreover, there is nothing in the record which demonstrates that plaintiff

is not able to effectively pursue this action. While it is possible that there will be conflicting

evidence implicating the need for cross-examination if this case proceeds to trial, "this factor

alone is not determinative of a motion for appointment of counsel." *Velasquez,* 899 F. Supp.

at 974 (citing *Hodge,* 802 F.2d at 61). Further, if this case survives a dispositive motion filed

by defendants, it is highly probable that this Court will appoint trial counsel at the final pretrial

conference. Finally, this Court is not aware of any special reason why appointment of

counsel **at this time** would be more likely to lead to a just determination of this litigation.

The Court therefore finds that, based upon the existing record in this case, appointment of counsel is unwarranted.

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**;[7] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's inmate authorization form (Dkt. No. 3), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk provide a copy of plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** the plaintiff's claims for money damages against the defendants in their official capacities are **DISMISSED with prejudice** for failure to state a claim in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A; and it is further

**ORDERED** that upon receipt from plaintiff of the documents required for service of process, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon the defendants.  The Clerk shall forward a copy of the summons and complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

---

[7]  Although his in forma pauperis application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that a response to plaintiff's remaining claims be filed by the defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff's motion for appointment of counsel (Dkt. No. 10) is **DENIED without prejudice**; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

Dated: June 25, 2013
        Syracuse, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

10