UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARLES RIEHL,

                                        Plaintiff,

                                                                    9:13-CV-00439
v.
                                                                    (GLS/TWD)
DONNA MARTIN; HOWARD MATASAR;
HAROLD GRAHAM,

                                        Defendants.
_____

APPEARANCES:                          OF COUNSEL:

CHARLES RIEHL
Plaintiff *pro se*
08-A-4913
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821

HON. ERIC T. SCHNEIDERMAN            DOUGLAS J. GOGLIA, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Counsel for the Remaining Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

        This *pro se* civil rights action, commenced by Plaintiff Charles Riehl pursuant to 42

U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Gary

L. Sharpe, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R.

72.3(c).  Plaintiff claims that while he was confined in Auburn Correctional Facility ("Auburn"),

Defendants Donna Martin ("Martin"), Food Administrator at Auburn; Howard Matasar

("Matasar"), a Rabbi assigned to Auburn on a part-time basis; and Harold Graham ("Graham"),

Auburn Superintendent, were guilty of violating his First Amendment right to the free exercise of

religion, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42

U.S.C. § 2000cc *et seq*., and of negligence in serving him food that violated Jewish law at the

first Passover Seder in April of 2012. (*See generally* Dkt. No. 1.) Plaintiff seeks injunctive relief

and compensatory and punitive damages. (Dkt. No. 1 at 21.)

Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure in lieu of answering Plaintiff's Complaint. (Dkt. No. 18.) Plaintiff has filed

papers in opposition to the motion. (Dkt. Nos. 21 and 24.) Plaintiff has also filed a motion to

amend his Complaint to change the dates for Passover in 2012 from April 18 through April 26,

2012 to the correct dates, April 6 through April 14, 2012.[1] (Dkt. No. 20.) Defendants have

opposed the motion on futility grounds. (Dkt. No. 23.) I hereby grant Plaintiff's motion to

amend his Complaint to reflect the correct dates for Passover in 2012, and direct that for

purposes of this motion, Plaintiff's Complaint be deemed so amended. For the reasons that

follow, the Court recommends that Defendants' motion for summary judgment (Dkt. No. 18) be

granted in its entirety as to Defendant Graham. The Court further recommends that the motion

be granted in part and denied in part, without prejudice, as to Defendants Martin and Matasar,

---

[1] Plaintiff states in his motion to amend that "[a]lso in consideration of the courts in amending this complaint also plaintiff will ask the court to afford compensation for actual damages as well [as] punitive damages for relief." (Dkt. No. 20.) Inasmuch as Plaintiff's Complaint, as originally filed, seeks relief in the form of both compensatory and punitive damages, there is no need for amendment of the Complaint with regard to the relief sought. (Dkt. No. 1 at 21.)

and that Plaintiff be granted leave to file an amended complaint asserting the new claims set forth in his opposition papers.

## I.    BACKGROUND

In his Complaint, Plaintiff identifies himself as an Orthodox Jew.  (Dkt. No. 1 at 13.) Plaintiff claims that the food served to him at the Seder held on the first night of Passover in April of 2012, was not prepared according to the kashrut (Jewish dietary law) in that it  contained chametz,[2] which Jews are prohibited from eating during Passover.  (Dkt. No. 1 at 4.)  According to Plaintiff, because the foods were not prepared in accordance with the kashrut, he was unable to partake of the meal.  *Id*.  Plaintiff contends that the improper handling and preparation of food during Passover can result in physical and mental harm to observant Jews.  *Id*. at 8-9.  Plaintiff claims that Defendants Martin and Matasar were both negligent in violating his right under the free exercise clause to eat properly prepared food for Passover.  (Dkt. No. 1 at 11, 14-16.)

Plaintiff has not described the meal about which he complains other than to allege in his Complaint (Dkt. No. 1) that it contained chametz, and in his opposition papers that sardines were removed from the can and placed in paper cups, and that the salad dressing, condiments, butter, and the hot meal served were not labeled kosher for Passover.[3]  (Dkt. Nos. 21 at ¶ 1; 24 at ¶ 4.) Plaintiff has not identified the type(s) of chametz he found in the meal.  (*See* Dkt. No. 1.)

---

[2] The Torah directs Jews not to eat "chametz" during Passover.  *See* Exodus 12:15. "Chametz" is "leven" – food made of grain and water that has been allowed to ferment and "rise."  *See* http://www.chabad.org/library/howto/wizard_cdo/aid/1755/jewish/1-What-is-Chametz.htm; *see also* Dkt. No. 1 at 22-23, 35-39.

[3] Plaintiff claims to have told Defendant Matasar about the sardines in cups, and that the salad dressing, condiments and butters served on the first night Seder were not kosher for Passover.  (Dkt. No. 24 at ¶ 4.)

Defendant Martin was Food Administrator at Auburn during Passover in 2012. (Dkt. No. 18-6 at ¶ 1.) As Food Administrator, Martin was responsible for overseeing and coordinating the preparation and provision of food to inmates, including ensuring that proper amounts of food were obtained; food was stored, handled and prepared properly; and kitchen facilities were properly maintained. *Id*. at ¶ 2. According to Martin, meals provided to Jewish inmates who keep kosher have been the same at Auburn for a number of years.[4] *Id*. at ¶ 4. The inmates are provided with cold alternative diets ("CADs"), which are kosher, or kosher for Passover as appropriate, on a daily basis. *Id*. An exception is made for the evening meals on certain Jewish holidays such as the two nights of Shavout, the two nights of Rosh Hashana, the first and last nights of Sukkoth, and all eight nights of Passover. *Id*.

Observant Jewish inmates are provided with pre-packaged and prepared hot meals certified as kosher by the Union of Orthodox Congregations ("OU") for Shavout, Rosh Hashana, and Sukkoth. *Id*. at ¶ 5. The kosher meals, manufactured by Milmar Food Group, LLC, are sold under the "Valley Stream" label, and purchased from SYSCO Food Services Corporation ("SYSCO") by the Department of Corrections and Community Supervision ("DOCCS"). *Id.* Martin has submitted an exemplar of a label from the boiled seasoned beef dinner, bearing the OU kosher certification trademark, as an example of the meals served for Shavout, Rosh Hashana, and Sukkoth. *Id.*; Dkt. No. 18-7 at 1.

Regular kosher certification is not sufficient for Passover, and foods that are kosher during the rest of the year are not kosher for Passover. (Dkt. No. 18-5 at ¶ 8.) Therefore,

---

[4] *See also* Defendant Matasar's Declaration. (Dkt. No. 18-5 at ¶¶ 6-8.)

according to Martin, on the eight nights of Passover, Jewish inmates are given pre-packaged and prepared hot Spring Valley meals certified by OU as "Kosher for Passover." (Dkt. No. 18-6 at ¶ 6.) Martin has also submitted an exemplar of a label from the packaging for the baked fish tomato herb dinner labeled "Kosher for Passover." (Dkt. No. 18-8 at 1-2.) A March 21, 2012, invoice from SYSCO for meals delivered to the DOCCS Food Production Center in Rome, New York included a total of 147 kosher for Passover meals and 42 kosher beef in broth boiled dinners not labeled as kosher for Passover and not certified as kosher for Passover on the Orthodox Union December 28, 2011, kosher certification letter.[5] (Dkt. Nos. 18-10 and 18-9.)

Martin's involvement in providing kosher and kosher for Passover meals to Jewish inmates is limited to ordering the proper number of meals from the Food Production Center, based on the count of observant Jewish inmates provided by the Facility Rabbi; ensuring that the meals are properly stored and refrigerated upon delivery; and making sure they are warmed before being served to the inmates. (Dkt. No. 18-6 at ¶ 9.) Defendant Matasar visits correctional facility kitchens approximately monthly to ensure that the food provided to Jewish inmates is prepared in accordance with Jewish dietary laws of kashrut. (Dkt. No. 18-5 at ¶ 3.) Matasar has no responsibility for, or direct involvement in, providing food to inmates, and he claims to have played no role in the preparation or provision of meals provided to Plaintiff during the 2012 Passover holiday. *Id.* at 18-5 at ¶¶ 3, 10.

---

[5] Except for noting that there are Jewish holidays in which regular Spring Valley kosher meals are served, Defendants have provided no explanation for why the 42 beef in broth boiled dinners, which were not certified as Kosher for Passover, were purchased at the same time as the Kosher for Passover meals and were identified as "frozen Passover dinners" on the description of goods received at the Food Production Center on March 21, 2012. (Dkt. Nos. 18-5 at ¶ 7; 18-6 at ¶ 5; 18-9 at 2.)

Matasar and Martin both claim to be unaware of any instance in which Plaintiff has been denied a Passover meal, or provided with a meal that was not kosher for Passover, and to have no reason to suspect that the pre-packaged and prepared kosher for Passover hot meals provided to Plaintiff during Passover contained foods that were not kosher for Passover. (Dkt. Nos. 18-5 at ¶ 9; 18-6 at ¶ 10.) Like Plaintiff, Defendants have failed to describe the meal served to Plaintiff at the first Passover Seder in 2012.

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint and applied for leave to proceed *in forma pauperis* in this action on April 22, 2013. (Dkt. Nos. 1 and 2.) On June 10, 2013, Plaintiff moved for the appointment of counsel. (Dkt. No. 10.) In a Decision and Order filed on June 25, 2013, Chief Judge Sharpe granted Plaintiff's *in forma pauperis* application, denied his motion for the appointment of counsel without prejudice, and dismissed Plaintiff's claims for money damages against Defendants in their official capacities with prejudice on the grounds that the claims are barred by the Eleventh Amendment to the Constitution. (Dkt. No. 12.) The Summons and Complaint were served on Defendants Martin, Graham, and Matasar on July 2, 15, and 17, 2013, respectively. (Dkt. Nos. 15-17.)

Defendants filed the motion for summary judgment in lieu of answering the Complaint now before me for Report and Recommendation on July 19, 2013.[6] (Dkt. No. 18.) Plaintiff

---

[6] Plaintiff moved for a default judgment on August 19, 2013, based upon Defendants' failure to answer the Complaint. (Dkt. No. 28.) Defendants opposed the motion and requested that the obligation to answer be stayed pending a decision on their summary judgment motion (Dkt. No. 29), and on September 19, 2013, the Court issued a Text Order granting Defendants' request for a stay. (Dkt. No. 32.)

thereafter filed his motion to amend his Complaint to reflect the proper dates for Passover in 2012 (Dkt. No. 20) and his opposition to Defendants' motion. (Dkt. Nos. 21 and 24.)

In August of 2013, Plaintiff filed a second motion for assignment of counsel. (Dkt. No. 25.) The Court denied the motion in a September 27, 2013, Decision and Order. (Dkt. No. 33.)

## III.    APPLICABLE LEGAL STANDARD

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). The nonmovant must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment. *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

"Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Salahuddin v. Coughlin*, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) ("pro se parties are to be given special latitude on summary judgment motions.") (citations and internal quotation marks omitted). However, "a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876 at *3, 1999 U.S. Dist. LEXIS 16767 at *8 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).[7]

## IV.    ANALYSIS

### A.    Deficiencies in Plaintiff's Opposition Papers

While courts are required to give due deference to a plaintiff's *pro se* status, that status "does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). In opposing Defendants' summary judgment motion, Plaintiff failed to respond to the Statement

---

[7] Copies of unpublished decisions cited herein will be mailed to Plaintiff as a *pro se* litigant. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

of Material Facts filed by Defendants in the manner required under N.D.N.Y. L.R. 7.1(a)(3).[8]

Where, as in this case, a party has failed to respond to the movant's statement of material facts in

the manner required under N.D.N.Y. L.R. 7.1(a)(3), the facts in the movant's statement will be

accepted as true (1) to the extent they are supported by evidence in the record,[9] and (2) the

nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of

failing to respond to the motion.[10]  *See Champion,v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

However, the Second Circuit, acknowledging a court's broad discretion to determine whether to

overlook a failure to comply with local rules, has held that "while a court is not required to

consider what the parties fail to point out in their [local rule statements of material facts], it may

in its discretion opt to conduct an assiduous review of the entire record even where one of the

parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d

---

[8]  L.R. 7.1(a)(3) requires the opposing party to file a response to the movant's Statement of Material Facts.  Under the rule, the response "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises."  Plaintiff's partial response to Defendants' Statement, found in his Motion to Dismiss Summary Judgment, is limited to disagreement with ¶¶ 14, 18, and 22 in Defendants' Statement, and as to those, Plaintiff has failed to set forth specific citations to the record where the claimed factual issue arises.

[9]  L.R. 7.1(a)(3) provides that "<u>The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>." However, *see Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d. Cir. 2004) ("[I]n determining whether the moving party has met his burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts in the moving party's [Statement of Material Facts].  It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted).

[10]  Defendants have complied with L.R. 56.2 by providing Plaintiff with the requisite notice of the consequences of his failure to respond to their summary judgment motion.  (Dkt. No. 24 at 3.)

Cir. 2001) (citation and internal quotation marks omitted). In deference to Plaintiff's *pro se* status, and in light of the fact that Defendants have moved for summary judgment so early in the litigation, I have opted to review the entire record in determining if there are material facts in dispute.

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (citation and internal quotation marks omitted). Where, as here, the Court elects to conduct an independent review of the record on a motion for summary judgment, a plaintiff's verified complaint should be treated as an affidavit.[11] *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . .") (citations omitted). Plaintiff's Opposition to the Declaration of Defendant Howard Matasar (Dkt. No. 24), which was signed under penalty of perjury, also constitutes admissible evidence that can be considered in opposition to Defendants' motion. *See* 28 U.S.C. § 1746 (authorizing the use of declarations made under penalty of perjury when an affidavit is required or permitted to be used).

Plaintiff's Motion to Dismiss Summary Judgment (Dkt. No. 21) is unsworn, and unsworn statements are generally inadmissible in opposition to a motion for summary judgment. *See, e.g.*, *Witzenburg v. Jurgens*, No. CV-05-4827 (SJF)(AKT), 2009 WL 1033395, at *11, 2009 U.S.

---

[11] Plaintiff's Complaint in this case was properly verified by declaration under 28 U.S.C. § 1746. *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999) (use of the language "under penalty of perjury" substantially complies with 28 U.S.C. §1746).

Dist. LEXIS 32126 (E.D.N.Y. April 14, 2009) (unsworn declarations are inadmissible for purposes of Rule 56 and cannot be considered by the court in deciding the motion for summary judgment).  Even so, on summary judgment motions involving *pro se* plaintiffs, courts have been known to consider unsworn submissions in opposition.  *See, e.g., Hamm v. Hatcher,* No. 05 Civ. 503 (ER), 2013 WL 71770, at *7, 2013 U.S. Dist. LEXIS 2203, *19-20 (S.D.N.Y. Jan. 7, 2013) (to afford *pro se* plaintiff special solicitude, the court considered unsworn statements in his opposition papers but only to the extent based on personal knowledge or supported by other admissible evidence in the record, on the assumption that if the allegations were sufficient to raise an issue of fact, plaintiff would be given the opportunity to submit an affidavit properly attesting to the allegations); *Robles v. Khahaifa*, No. 09CV718 (HBS), 2012 WL 2401574, at *7, 2012 U.S. Dist. LEXIS 87834, at *20-22 (W.D.N.Y. June  25, 2012).  In deference to Plaintiff's *pro se* status, and because the action is at such an early stage, the Court will consider Plaintiff's unsworn Motion to Dismiss Summary Judgment in opposition to Defendants' motion.

### B.      New Claims Raised by Plaintiff in his Opposition Papers

Plaintiff's Complaint alleges that there was chametz in the meal served at the Seder on the first night of Passover in 2012.  (Dkt. No. 1 at 4, 18.)  However, in his opposition to Defendants' summary judgment motion, Plaintiff goes well beyond the allegations in his Complaint.  He claims that in addition to containing chametz, the salad dressing, condiments, butter, and the hot meal served at the first Seder were not labeled kosher for Passover.  (Dkt. Nos. 21 at ¶ 1; 24 at ¶ 4.)  Plaintiff also claims that the 42 kosher, but not kosher for Passover, beef in broth boiled dinners listed in the SYSCO invoice submitted by Defendants were given to inmates throughout Passover in 2012.  (Dkt. No. 21 at ¶ 3.)  He does not, however, specifically

claim that he was served one of those beef dinners at the Seder on the first evening of Passover.

In addition, in his opposition papers, Plaintiff complains that during Passover in 2012, the

sardines and tuna served for lunch each day were taken out of the cans and placed in small dixie

cups in violation of kashrut, the food in the lunch bags given inmates during Passover contained

chametz, and the dressings, butters, and tuna fish were not kosher for Passover.  (Dkt. No. 21 at ¶

6.)  According to Plaintiff, when he complained to Defendant Matasar about the lunch bags

containing chametz and asked him to go to the kitchen and fix the situation, Matasar responded

that Plaintiff was in prison and he should not come to prison if he wanted to eat kosher.  Plaintiff

claims Matasar told him he could eat the lunches or not.  *Id.*

In their Reply Memorandum of Law, Defendants argue that under well-settled law,

Plaintiff cannot raise new claims in papers in opposition to a motion for summary judgment.

(Dkt. No. 22 at 4-5.)  *See, e.g., Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007)

(holding that the district court did not err in disregarding allegations the plaintiff raised for the

first time in response to the defendant's motion for summary judgment); *Jones v. Fischer*, No.

9:10-cv-1331 (GLS/ATB), 2013 WL 5441353, at *15, n.23, 2013 U.S. Dist. LEXIS 140318, at

*47, n.23 (N.D.N.Y. Sept. 27, 2013) ("Generally a party may not raise new claims in his or her

response to a motion for summary judgment.") (collecting cases).  However, the stated rationale

for disregarding claims first asserted in opposition to a motion for summary judgment does not fit

in this instance.  *See Beckman v. U.S. Postal Service*, 79 F. Supp. 2d 394, 407-08 (S.D.N.Y.

2000) ("Although a complaint need not correctly plead every legal theory supporting the claim, at

the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to

prepare an appropriate defense.  Because a failure to assert a claim until the last minute will

12

inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.") (citations and internal quotation marks omitted); *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp*., 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997) (attempt by plaintiff to add claim never addressed in the complaint is inappropriate in a brief in opposition to a motion for summary judgment made after the close of discovery without leave of court); *see also Jackson v. Onondaga Cnty.,* 549 F. Supp. 2d 204, 219-20 (N.D.N.Y. 2008) (McAvoy, J. *adopting* Report-Recommendation of Lowe, M.J.) (in an action filed in November of 2005, where discovery had closed in December of 2006, court concluded that new factual allegations raised by plaintiff in opposition to summary judgment motion should not be considered, where "the four new allegations [were] not made in response to a motion to dismiss (which typically occurs relatively early in an action, before discovery has occurred) . . . [and] the net effect of permitting Plaintiff to so change the landscape of his claims at this late stage of the action would be to deprive Defendants of the fair notice envisioned by Fed.R.Civ.P. 8.").

Because Defendants moved for summary judgment in lieu of filing an answer within weeks of service of Plaintiff's Complaint and prior to any discovery in the action, the Court will consider the new factual allegations and claims raised in Plaintiff's opposition papers.

### C.    Plaintiff's Claims Under RLUIPA

Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government shows that the burden imposed "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering" that interest.  42 U.S.C. § 2000cc-1(a).  RLUIPA includes an

express private cause of action: "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."  42 U.S.C. § 2000cc-2(a).  "Government" includes, *inter alia*, States, counties, municipalities, their instrumentalities and officers, and persons acting under color of state law.  42 U.S.C. § 2000cc-5(4)(A).

In his June 25, 2013, Decision and Order, Chief Judge Sharpe dismissed Plaintiff's RLUIPA and § 1983 claims for money damages against Defendants in their official capacities on the grounds that those claims are barred by the Eleventh Amendment.[12]  (Dkt. No. 12 at 7.) Recently, in *Washington v. Gonyea*, 731 F.3d 143 (2d Cir. 2013), the Second Circuit held that RLUIPA does not create a private cause of action against state officers in their individual capacities.  *Id*. at 145-46.  Therefore, I recommend that Defendants' motion for summary judgment dismissing Plaintiff's RLUIPA claims against them in their individual capacities be granted.

### D.  Plaintiff's Free Exercise Claim Against Defendant Graham

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *McKinnon v. Patterson,*

---

[12]  Plaintiff has requested a temporary restraining order against Defendants in his Complaint.  (Dkt. No. 1 at 21.)  All of the events of which Plaintiff complains took place at Auburn, where Defendants are employed.  (*See generally* Dkt. No. 1.)  Plaintiff has since been transferred from Auburn and is presently incarcerated at Great Meadow Correctional Facility ("Great Meadow").  (Dkt. No. 31.)  Great Meadow is not one of the correctional facilities to which Defendant Matasar is assigned.  (Dkt. No. 18-5 at ¶ 1.)   Therefore, I recommend that Defendants be granted summary judgment dismissing Plaintiff's request for what appears to be injunctive relief under RLUIPA and the Free Exercise Clause as moot.  *See Washington*, 731 F.3d at 144, n. 1; *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (transfer from a correctional facility generally moots a claim for injunctive relief against officials in the facility).

568 F.2d 930, 934 (2d Cir. 1977). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22-23 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon*, 568 F.2d at 934); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections . . . in a § 1983 claim") (citing *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to

act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 872, 873 (2d Cir. 1995).[13]

The only allegations in the Complaint regarding Graham are that he does not have "a strong institutional interest in the effectiveness of beliefs in [Plaintiff's] religious practices of observing Judaism and the holy day of Passover," and that he was negligent with regard to the Passover menu.[14] (Dkt. No. 1 at 14.) In his opposition papers, Plaintiff's sole claim of personal involvement by Graham is that Graham told Defendant Martin to take the sardines and tuna out of the cans before serving them to the inmates which, according to Plaintiff, violated the kashrut. (Dkt. No. 21 at ¶ 6.)[15] "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F. 3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). The reach of the free exercise clause extends to "an inmate's diet and participation in religious meals." *Johnson v. Guiffere*, No. 9:04-CV-57 (DNH/DEP), 2007 WL 3046703, at *4, 2007 U.S. Dist. LEXIS 98781, *14-15 (N.D.N.Y. Oct. 17, 2007) ("Courts have generally found

_____

[13]     The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) has arguably nullified some of the categories set forth in *Colon*. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). However, the Second Circuit has yet to issue a decision addressing *Iqbal's* effect on the *Colon* categories, and I will assume for purposes of this motion that *Colon* remains good law.

[14]   Mere negligence is insufficient to establish liability on the part of a prison official under § 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

[15]   Plaintiff is required to demonstrate that the beliefs he professes are "sincerely held" and in his "own scheme of things, religious." *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citation and internal quotation marks omitted). Plaintiff has described himself as an "observant Orthodox Jewish man" (Dkt. No. 1 at 13), and Defendants have not disputed Plaintiff's self-characterization. Therefore, the Court will assume for purposes of Defendants' motion that Plaintiff's Jewish faith is a sincerely held religious belief.

that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights.").

However, the protections afforded inmates by the First Amendment are not as extensive as the rights enjoyed by ordinary citizens because "[a] prison inmate . . . retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (citation and internal quotation marks omitted); *see also Ford*, 352 F.3d 588 ("Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, . . . are the interests of prison officials charged with complex duties arising from administration of the penal system.") (internal quotation marks and brackets omitted).

The governing standard in determining whether restrictions on an inmate's religious practices passes First Amendment muster is one of reasonableness. *Ford*, 352 F.3d at 588 ("the free exercise claims of prisoners are therefore judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights") (additional internal quotation marks omitted). A generally applicable policy will not be held to violate an inmate's right to free exercise of religion if the policy "is reasonably related to legitimate penological interests." *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (citation and internal quotation marks omitted).

In *Russell v. Ricks*, No. 9:02-CV-0940 (LEK/DEP), 2006 WL 1555468, at * 6, 2006 U.S. Dist. LEXIS 39772, at *18 (N.D.N.Y. May 31, 2006), the district court noted that both district courts in the Second Circuit and New York appellate courts "have uniformly held that can tops constitute weapons." (punctuation omitted) (collecting cases); *see also Odom v. Dixion,* No. 04-

CV-889F, 2008 WL 466255, at *7, 2008 U.S. Dist. LEXIS 11748, at *19-20 (W.D.N.Y. Feb. 15, 2008) (accepting defendants' assertion that because can lids have sharp metal edges, they can be fashioned into weapons and rejecting plaintiff's claim that his free exercise rights were violated by permitting a non-Jew to open cans of sardines and tuna and place the contents in paper cups); *Dodge v. County of Orange*, 282 F. Supp. 2d 41, 68-69 (S.D.N.Y. 2003) (listing a bent can lid as a weapon); *People v. Jones*, 585 N.Y.S.2d 872, 873 (3d Dep't 1992) (testimony established that an altered can lid could be used as a weapon). In light of the general recognition that can lids can constitute weapons in the hands of inmates, the Court finds that even if Graham did direct Martin to take the sardines and tuna out of the cans, the directive was reasonably related to legitimate penological interests and, therefore, did not violate Plaintiff's rights.[16]

Based upon the foregoing, I recommend that summary judgment be granted dismissing Plaintiff's First Amendment free exercise claim against Defendant Graham in his individual capacity.

### E. Plaintiff's First Amendment Free Exercise Clause Claim Against Defendants Martin and Matasar

The free exercise claim against Defendants Martin and Matasar in Plaintiff's Complaint is limited to the alleged presence of chametz in the Seder meal served him on the first evening of Passover in 2012. (*See generally* Dkt. No. 1.) In his Complaint, Plaintiff has himself described Defendants Martin and Matasar's actions in allowing him to be served a meal that contained chametz at the first Passover Seder as a negligent violation of his constitutional rights. (Dkt. No. 1 at 11, 14-16). Given the evidence presented by Martin and Matasar of the established practice

---

[16] The same would be true as to Plaintiff's claims against Defendants Martin and Matasar with respect to removal of the sardines and tuna from cans.

at Auburn of acknowledging inmates' religious dietary requirements by giving them pre-packaged kosher for Passover evening meals, the record does not support a finding that the presence of chametz in Plaintiff's meal at the first Seder was the result of established prison policy or an intentional disregard of Plaintiff's right to food satisfying the dictates of his faith, as opposed to a mistake or negligence as Plaintiff has himself alleged. (Dkt. No. 1 at 11, 14-16.) Even if Martin and Matasar were negligent in failing to ensure that Plaintiff was given kosher for Passover food for the Seder, conduct "amount[ing] to [nothing] more than negligence, . . . is not actionable under the First Amendment."[17] *Tafari v. Brown*, No. 9:10-CV-1065 (GTS/DRH), 2012 WL 1098447, at *6, 2012 U.S. Dist. LEXIS 45055, at *16 (N.D.N.Y. Mar. 30, 2012); *see also Gallagher v. Shelton,* 587 F.3d 1063, 1070 (10th Cir. 2009) (allegations of isolated, negligent acts with respect to prisoner's receipt of a kosher diet did not state a First Amendment claim)*; Lovelace v. Lee,* 472 F.3d 174, 201 (4th Cir. 2006) ("[n]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause").[18]

---

[17] Although Matasar has acknowledged that his responsibilities as Rabbi at Auburn included visiting the kitchen at Auburn to ensure that foods provided to Jewish inmates were prepared in accordance with kashrut, there is no evidence he was personally involved in purchasing, preparing, or serving Plaintiff's meal on the first night of Passover. (Dkt. No. 18-5 at ¶ 3.) As previously noted, personal involvement is a prerequisite to an award of damages under § 1983. *McKinnon*, 568 F.2d 934.

[18] Martin and Matasar also argue that even if Plaintiff did not receive a proper kosher for Passover meal the first Seder of Passover, it was *de minimis* and cannot be found to have substantially burdened his sincerely held religious beliefs. (Dkt. No. 18-2 at 9-12.) *See Salahuddin v. Goord,* 467 F.3d at 274-75 (inmate "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."). There is a substantial amount of case law finding that denial of a religious meal on a small number of occasions is *de minimis* and does not give rise to a First Amendment claim. *See, e.g.*, *Wilson v. Woodbourne Correctional Facility*, No. 9:11-CV-1088 (DNH/AT), 2012 WL 1377615, at *3, 2012 U.S. Dist. LEXIS 54989, at *8 (N.D.N.Y. March 21, 2012); (the withholding of a single religious meal is at most a *de minimis* burden on a prisoner's religious expression); *Odor v. Dixon*, 2008 466255, at

While there is no evidence establishing more than possible negligence on the part of

Defendants Martin and Matasar with regard to the allegations regarding chametz in the food

served at the first Seder, Plaintiff's opposition papers include new claims of the arguably

knowing violation of his First Amendment rights by Martin and Matasar during Passover of

2012. Martin, who acknowledges being responsible for overseeing and coordinating the

preparation and provision of food to inmates, and Matasar, who acknowledges being responsible

for checking the kitchen at Auburn to ensure that food is prepared in accordance with kashrut,

have stated that during Passover, Jewish inmates at Auburn are given meals that are kosher for

Passover. (Dkt. Nos. 18-5 at ¶¶ 2, 6; 18-6 at ¶ 4.) However, in his opposition papers, Plaintiff

claims that the salad dressing, condiments, and butter served at the first Seder were not kosher

for Passover. (Dkt. Nos. 21 at ¶ 1; 24 at ¶ 4.) In addition, Plaintiff has described the CAD lunch

bags given to Jewish inmates during Passover as containing chametz throughout the whole bag.

(Dkt. No. 21 at ¶ 6.) Moreover, according to Plaintiff, when he complained to Matasar about the

---

*11 (failure to provide inmate with kosher meals on 7 out of 33 occasions not sufficient under
the First Amendment). However, in *Ford*, 352 F.3d at 594, n.12, the Second Circuit found that
the Eid ul Fitr feast was sufficiently unique in its importance within Islam to distinguish that case
from those in which the inability to provide a small number of meals commensurate with an
inmate's religious beliefs was a *de minimis* burden, and indicated that the court was inclined to
hold that the plaintiff had established a substantial burden as a result of missing the religious
feast. *See also Shakur,* 391 F.3d at 120 (reversing the district court holding that "the missing of a
single Eid ul Fitr feast simply does not amount to a 'substantial burden' on his religious
exercise.") A Passover Seder has been recognized as being greatly significant to Jewish
adherents. *See, e.g., Whitney v. Brown*, 882 F.2d 1068, 1074 (6th Cir. 1989) (explaining Seder
"marks the exodus of the Jewish people from Egypt. It is a most sacred time for believers in the
Jewish faith, both for historic reasons and for its celebration of family and community
. . . ."). Therefore, if Plaintiff was intentionally denied a meal that was kosher for Passover,
whether or not the denial was *de minimis* could conceivably present a question of fact.

lunch bags containing chametz, Matasar told him if he wanted to eat kosher he should stay out of prison. *Id*. An intentional disregard of Plaintiff's right to a diet consistent with his sincerely held religious beliefs could constitute a violation of his First Amendment rights. *See Johnson v. Guiffere*, 2007 WL 3046703, at *4.

Martin states in her Declaration that pre-packaged kosher, but not kosher for Passover, meals like the boiled seasoned beef dinner (Dkt. No. 18-7) are given to inmates on Jewish holidays other than Passover. (Dkt. No. 18-5 at ¶ 5.) However, Plaintiff claims that the boiled seasoned beef dinners were served throughout Passover, despite not being kosher for Passover. (Dkt. No. 21 at ¶ 3.) Given that the DOCCS Food Production Center receipt submitted by Martin includes the boiled beef dinners in the list of "frozen Passover dinners," it is conceivable that, whether inadvertently or intentionally, those meals were served during Passover as Plaintiff contends. (Dkt. No. 18-9.)

Plaintiff's new claims against Defendants Martin and Matasar have been asserted before discovery, at a point where it would not be prejudicial to Defendants to allow him to amend his complaint to include them. Therefore, giving due deference to Plaintiff's *pro se* status, the Court recommends that Defendants Martin and Matasar's motion for summary judgment with regard to Plaintiff's free exercise claim against them in their individual capacities be denied without prejudice, and that Plaintiff be granted leave to file an amended complaint including the new claims asserted in his opposition papers.[19]

---

[19] Had Defendants made a pre-discovery motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure rather than a summary judgment motion in lieu of an answer, Plaintiff, as a *pro se* complainant, would likely have been found entitled to an opportunity to amend his Complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (where a *pro se* complaint fails to state a cause of action, the court generally

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for leave to amend his Complaint to reflect the correct dates for Passover in 2012 (Dkt. No. 20) is **<u>GRANTED</u>**; and it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 18) be **<u>GRANTED</u>** as to Defendant Graham; and it is further

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 18) be **<u>GRANTED</u>** in part and **<u>DENIED</u>** in part, without prejudice, as to Defendants Martin and Matasar as follows:

    1.   Summary judgment be **<u>GRANTED</u>** to Defendants Martin and Matasar on Plaintiff's claim under RLUIPA; and

    2.   Summary judgment be **<u>DENIED</u>** to Defendants Martin and Matasar, without prejudice, on Plaintiff's claim under 42 U.S.C. § 1983 for violation of his rights under the First Amendment Free Exercise Clause; and it is further

**RECOMMENDED** that Plaintiff be granted leave to amend his Complaint to assert the new claims against Defendants Martin and Matasar set forth in his papers in opposition to Defendants' motion for summary judgment (Dkt. Nos. 21 and 24); and it is further

**RECOMMENDED** that with respect to any amended complaint filed by Plaintiff, he be instructed to include factual allegations describing the role of Defendants Martin and Matasar

---

"should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated" unless "the problem with [the plaintiff's] causes of action is substantive" and could not be cured by a better pleading) (citation and internal quotation marks omitted).

sufficiently to allow the Court to assess whether a plausible claim has been stated against them; and that the amended complaint be a wholly integrated and complete pleading, with separately numbered allegations, that does not rely upon, or incorporate by reference, the complaint previously filed in the action; and it is hereby

**ORDERED** that in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam), the Clerks Office provide Plaintiff with copies of the following unpublished decisions: *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876 (S.D.N.Y. Oct. 28, 1999); *Witzenburg v. Jurgens*, No. CV-05-4827 (SJF)(AKT), 2009 WL 1033395 (E.D.N.Y. April 14, 2009); *Hamm v. Hatcher,* No. 05 Civ. 503 (ER), 2013 WL 71770 (S.D.N.Y. Jan. 7, 2013); *Robles v. Khahaifa*, No. 09CV718, 2012 WL 2401574 (W.D.N.Y. June  25, 2012); *Jones v. Fischer*, No. 9:10-cv-1331 (GLS/ATB), 2013 WL 5441353 (N.D.N.Y. Sept. 27, 2013); *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919 (N.D.N.Y. Feb. 28, 2012); *Johnson v. Guiffere*, No. 9:04-CV-57, 2007 WL 3046703 (N.D.N.Y. Oct. 17, 2007); *Russell v. Ricks*, No. 9:02-CV-0940 (LEK/DEP), 2006 WL 1555468 (N.D.N.Y. May 31, 2006); *Tafari v. Brown*, No. 9:10-CV-1065 (GTS/DRH), 2012 WL 1098447 (N.D.N.Y. Mar. 30, 2012); *Wilson v. Woodbourne Correctional Facility*, No. 9:11-CV-1088 (DNH/ATB), 2012 WL 1377615 (N.D.N.Y. March 21, 2012).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

23

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: December 19, 2013
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge